747 So.2d 982 (1999)
Lloyd M. JONES, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-2921.
District Court of Appeal of Florida, Third District.
November 3, 1999.
Lloyd M. Jones, in proper person.
Robert A. Butterworth, Attorney General, and Mark Rosenblatt, Assistant Attorney General, for appellee.
Before COPE, LEVY and GREEN, JJ.
PER CURIAM.
The appellant, Lloyd M. Jones, appeals an order denying his motion for postconviction relief made pursuant to Florida Rules of Criminal Procedure rule 3.850. After reviewing the record on appeal, we find that the record conclusively establishes that the appellant is entitled to no postconviction relief. Consequently, we affirm the trial court's summary denial of his motion without an evidentiary hearing.
The appellant was charged with and convicted of burglary of an unoccupied conveyance. Simply stated, he was charged with breaking into the victim's car and stealing a toolbox. His defense was misidentification. The case proceeded to trial by jury where the victim, Stirling Baker, testified that on the date in question, he *983 had fallen asleep in his home in the afternoon hours, and was awakened to the sounds of breaking glass outside of his home. When Baker looked out of the window, he saw that the driver's side window to his car had been shattered and saw the appellant, whom he recognized from the neighborhood, running away with his (Baker's) toolbox. Baker initially yelled out at the appellant and later decided to pursue the appellant in his automobile. After his efforts to locate the appellant were unsuccessful, Baker returned to his home. He testified that it was "late" when he decided to call the police.
Police Officer Luis Fernandez then testified that he responded to the victim's call at about 3:55 a.m. and it was his understanding that the crime had been committed a short time before his arrival.[1] After the victim gave him a description of the appellant, he and another police officer canvassed the neighborhood. Some individuals in the neighborhood informed them where the appellant might be located and the police proceeded to that location. Upon their arrival, they arrested the appellant and administered Miranda warnings.[2] Officer Fernandez testified that after the Miranda warnings were administered, the appellant offered to return the toolbox to the victim the following day.[3]
The dissent suggests that the only reason the appellant made this offer was because he was intimidated or afraid of the officers who entered his home, with guns drawn, at 3:00 a.m. Dissenting opinion at 986. However, after the appellant made the offer, the officer transported the appellant to the victim's home where the victim made a positive identification. While at the victim's home, on his own accord and without any prodding by the officers, the appellant offered to return the toolbox if the victim agreed not to press charges. The victim declined this offer.[4] Thus, the dissent's suggestion of intimidation or fear is mooted by the appellant's voluntary offer to the victim.
We pause to address yet another point raised in the dissent. The dissenting judge states that he is "very troubled at the discrepancy between the victim's testimony and the officer's testimony regarding the time of day." Dissenting opinion at 987. While in some cases discrepancies in testimony concerning the time in which a crime occurred could be relevant, here however, in light of the appellant's admissions, such discrepancies are of no consequence. Indeed, the appellant told the arresting officer that he would return the victim's tool box in the morning, see supra note 3, and also, the appellant attempted to return the victim's tool box to in exchange for the victim not filing criminal *984 charges, see supra note 4. Thus, the we conclude that the victim's and the arresting officer's discrepancies in time, is of no moment when weighed against the appellant's post-arrest admissions.
After the state rested, the appellant took the stand to testify on his own behalf. Although he denied burglarizing the victim's car and stealing the toolbox, he acknowledged that after his arrest, he offered to return the toolbox to the victim. The defense rested. The jury returned a guilty verdict and the appellant was sentenced as a violent career criminal pursuant to section 775.084, Florida Statutes (1995). His direct appeal of his conviction to this court was affirmed per curiam. See Jones v. State, 717 So.2d 1025 (Fla. 3d DCA 1996).
The appellant then filed the instant postconviction motion and raised two claims. First, he argued that his trial court counsel was ineffective for failing to investigate and call two witnesses at trial, namely, Robin Chimilio and Johnny Morell. Both witnesses would allegedly have provided exculpatory evidence on his behalf. In his motion, the appellant acknowledges that his trial court counsel declined to call Ms. Chimilio to the stand because of her past criminal record. He further states in his motion that Mr. Morell, now deceased, was not called to the stand but was available during the trial. According to the appellant, Morel was not called because his defense counsel had not had an opportunity to interview him prior to trial.
In support of his motion, the appellant attached two affidavits, one from Ms. Chimilio and one from his brother, Johnny Miller, who had purportedly spoken to Mr. Morell prior to the latter's death. According to Ms. Chimilio's affidavit, she gave a pretrial deposition in this case and explained that the appellant was her live-in boyfriend. Further, she averred that the appellant had been with her continually from 5:00 in the afternoon on the date of the crime until approximately 4:30-5:00 the next morning when the police arrived at their residence to arrest him.
According to Mr. Miller's affidavit, he had had a conversation with Mr. Morell prior to Mr. Morell's death about the incident. Mr. Miller averred that Mr. Morell had stated that the victim's version of events surrounding the stealing of the toolbox "was a lie." According to Mr. Miller, Mr. Morell, if called, would have testified as follows: At about 2:30 a.m. on the day of the incident, Mr. Morell was walking past the victim's residence and noticed that the victim's car window was shattered. Mr. Morell notified the victim and the victim noticed that his toolbox was missing from the car. Thereafter, the victim and Mr. Morell drove around the neighborhood in an effort to locate the perpetrator. When they could not find the thief, the victim decided to call the police. Mr. Morell did not want to talk to the police so the victim drove Mr. Morell home before the police were called.
Given the trial testimony of the state's witnesses as well as the appellant's own testimony that he offered to return the stolen toolbox to the victim, it is abundantly clear that the appellant cannot meet his burden under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), of demonstrating that the outcome of this trial would have likely been different if his defense counsel would have called Mr. Morell and Mr. Chimilio to the stand during the trial. First of all, even if Mr. Morell was still alive to testify, his proposed testimony would not have exculpated the appellant. Neither, the supposed alibi testimony by Ms. Chimilio nor Mr. Morell's alleged impeachment testimony would have overcome the appellant's own post-Miranda offer to return the stolen toolbox to the victim. Clearly then, the defense counsel's decision not to call these witnesses can only be characterized as sound trial strategy, not ineffective assistance of counsel. See Cooley v. State, 642 So.2d 108-09 (Fla. 3d DCA 1994) (failure to call witnesses not *985 ineffective assistance when there is ample evidence contradicting the proposed testimony of the witnesses); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) (tactical or strategic decision of counsel does not justify postconviction relief on the grounds of ineffective assistance of counsel even if the strategic decision ultimately turns out to be a bad decision). For these reasons, we affirm the summary denial of the motion for postconviction relief.
In the appellant's second point of error, he proffers that the violent career criminal statute under which he was sentenced, see sections 775.084(1)(c),(4)(c), Florida Statutes (1995), is unconstitutional because it violates the single subject rule of article III, section 6, of the Florida Constitution. We have previously held, however, that this statute does not violate the single subject rule and is therefore, constitutional. See Higgs v. State, 695 So.2d 872 (Fla. 3d DCA 1997); but see Thompson v. State, 708 So.2d 315 (Fla. 2d DCA), review granted, 717 So.2d 538 (Fla.1998)(holding that this statute is unconstitutional because it violates the single subject rule). We do certify conflict, however, with Thompson.
Affirmed; conflict certified.
LEVY and GREEN, JJ., concur.
COPE, J., concurs in part and dissents in part.
GREEN, J. (specially concurring in part).
I fully agree with the affirmance of the summary denial of the appellant's conviction, but write separately to address the appellant's sentence for burglary of an unoccupied conveyance entered pursuant to the "Officer Evelyn Gort and All Fallen Officers Career Criminal Act of 1995," Chapter 95-182, Laws of Florida. As I have previously written in my special concurring opinions in Williams v. State, 731 So.2d 99 (Fla. 3d DCA 1999); Valdes v. State, 728 So.2d 1225 (Fla. 3d DCA 1999); John v. State, 724 So.2d 708 (Fla. 3d DCA 1999); English v. State, 721 So.2d 1250 (Fla. 3d DCA 1998); and Elliard v. State, 714 So.2d 1218 (Fla. 3d DCA), review granted, 728 So.2d 201 (Fla.1998), I believe that this act, as written, is unconstitutional because it violates the single subject requirement of article III, section 5 of the Florida Constitution for the reasons set forth in the Second District's opinion in Thompson v. State, 708 So.2d 315 (Fla. 2d DCA), rev. granted, 717 So.2d 538 (Fla. 1998). Therefore, I believe that this court should recede from its opinion in Higgs v. State, 695 So.2d 872 (Fla. 3d DCA 1997), and its progeny,[1] reverse the appellant's sentence and remand for resentencing.
COPE, J. (concurring in part and dissenting in part).
I would reverse the order denying postconviction relief and remand for an evidentiary hearing.
In this bizarre case, the material witnesses could not agree on whether it was daytime or nighttime when the crime was committed.
The victim testified that he heard his car being broken into during the daytime, and he went outside and saw the defendant (whom he knows) walking down the street *986 with the toolbox which had been in the victim's car.
The police officer who responded to the call, however, was very definite that he came to the victim's house at approximately 3:00 a.m., soon after the call, and it was dark and had been dark for a long time.
The defendant testified that the police officers woke him up at his girlfriend's house after 3:00 a.m. and arrested him. The police officer testified that the defendant promised to give the toolbox back. The defendant testified that the police officer had pulled a gun on him, said that if defendant gave the toolbox back all charges would likely be dropped, and that he went along with whatever the officer said. The jury sent out multiple questions trying to find out what time the crime occurred.
Defendant contends that defense counsel was ineffective for failing to call Robin Chimilio, defendant's girlfriend, as an alibi witness. Her affidavit indicates that she would have testified the two of them were together from 5:30 or 6:00 p.m. until the police officer arrived in the early morning hours. The second affidavit, filed by defendant's brother, contradicts the victim's testimony.
Under this court's standard of review, "Unless the record shows conclusively that the appellant is entitled to no relief, the order shall be reversed and the cause remanded for an evidentiary hearing." Fla. R.App. P. 9.140(i). As the record does not conclusively refute defendant's claim he is entitled to a hearing.
The majority opinion says defendant "acknowledged that after his arrest, he offered to return the toolbox to the victim." Majority opinion at 984. If that were all there is to it, I would agree with the majority. But that is not all there is to it.
Defendant testified that the police officers arrived at around 3:15 a.m. and:
They come back there in the room. I'm back there. I got on a pair of boxers. He come with his gun, he says you make one move I'll shoot you.
. . . .
Q. Okay. All right. Now, whatever you said and it was a little unclear back and forth about getting the tools the next day, when you were speaking with the police, what you said to the police about getting the tools, did you know where the tools were?
A. No, sir.
Q. Did you know anything about the tools?
A. No, sir.
Q. Why did you say anything to the police at all?
A. `Cause it was something likeI was kind of scared when he said something about some tools and I said, man, I don't know nothin' about no tools, I been here all day.
Q. Did you say to him something about the next day getting the tools?
A. When he said it.
Q. Pardon?
A. When he said it.
Q. And then what did you say to him?
A. I said, yeah, what about the next day, we'll be able to get them then if that's what you say.
Q. You were just trying to be agreeable?
A. Yes, sir.
Q. Did you go into Stirling's car?
A. No, sir.
Q. Did you break a window of his car?
A. No. sir.
. . . .
Q. Did you break into his car?
A. No, sir.
Q. Did you reach into his car?
A. No, sir.
Q. Were you anywhere near his car?
A. No, sir.

*987 . . . .
Q. When you said about getting the tools tomorrow, were you confessing to the police officer?
A. No, sir, I wasn't.
MR. COXHEAD: Objection.
THE COURT: Overruled.
THE WITNESS: I just went along with whatever he said. He said what about tomorrow. I said, yeah, what about tomorrow, we'll get them tomorrow.
BY MR. BERGER:
Q. You never told him you stole any goods, did you?
A. No, sir, I didn't know anything about no tools until he came in the house and said he was going to arrest me for some tools.
. . . .
Q. What were you saying, Lloyd?
A. I was saying come back tomorrow, we'll get them. I didn't know nothin' about no tools. Then he said, well, tell me what he tell me
Q. Not what he said. What did you say?
A. Well, you come in there with a gun, well ...
Q. Yeah.
MR. BERGER: Nothing further.
TR. 135, 138-39, 141-42.[**] In sum, defendant testified that the officer told him that if he offered to return the toolbox, the victim would likely drop the charges.
I remain very troubled at the discrepancy between the victim's testimony and the officer's testimony regarding the time of day. In opening statement, the State informed the jury that this incident occurred at approximately one o'clock a.m. The State was clearly surprised when the victim testified that the theft of the toolbox took place during daytime hours. The officer testified that it was his understanding that the theft had occurred shortly before he was called to the scene. This officer worked the midnight to 8:00 a.m. shift, when it was dark. This discrepancy is not explained in the record. It certainly raises a question about the victim's testimony and how the victim could have identified the defendant if it was dark. Perhaps there are satisfactory explanations for all of this, but they don't appear in the present record and these discrepancies were the subject of multiple jury questions.
The issue before us at this time is not whether the defendant's conviction should be overturned. The question is whether the defendant is entitled to a hearing on his motion. I think the present record does not conclusively refute the defendant's claim, see Fla. R.App. P. 9.140(i), and respectfully disagree with the majority's determination to the contrary. I would remand for an evidentiary hearing. See Fla. R.Crim. P. 3.850(d).
I concur with the majority opinion in upholding the constitutionality of the violent career criminal statute.
NOTES
[1] The officer testified:

Q. And the crime had occurred earlier in the
A. A little bit earlier, yes.
* * * * * *
Q. And you testified that the events had occurred a little while earlier; is that correct?
A. Yes.
Q. And you had been advised that something had happened, but you had no idea that it was eight hours or ten hours earlier or anything like that, did you?
A. From what I understood, it was a short time before, before I had arrived.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The arresting officer testified:

Q. And did he make any statements to you?
A. While in custody the defendant stated thatlet's see. He saidbasically he said I'll get his tools back because they're closed now and he couldn't get them at this time. This is about 3:30 in the morning or possibly a little later. He couldn't get his tools, he couldn't get the old man's tools at this time, if you wait he would get them back tomorrow.
[4] The victim testified:

Q. Okay. What happened when you saw the officer later?
A. He brought him back by the house and asked me was that him and I said yes. Then he told the officer to tell me don't press charges, he will get my tools back, so I told him no way.
[1] See Lee v. State, 739 So.2d 1175 (Fla. 3d DCA 1999); Williams, 731 So.2d at 99; Valdes, 728 So.2d at 1225; McGowan v. State, 725 So.2d 470 (Fla. 3d DCA 1999); Russell v. State, 725 So.2d 1274 (Fla. 3d DCA 1999); Waldo v. State, 728 So.2d 280 (Fla. 3d DCA 1999); Robbins v. State, 730 So.2d 313 (Fla. 3d DCA 1999); Gonzalez v. State, 724 So.2d 1271 (Fla. 3d DCA 1999); Marshall v. State, 723 So.2d 923 (Fla. 3d DCA 1999); English, 721 So.2d at 1250; Spann v. State, 719 So.2d 1031 (Fla. 3d DCA 1998); Tillman v. State, 718 So.2d 944 (Fla. 3d DCA 1998), review granted, 727 So.2d 914 (Fla.1999); Cyrus v. State, 717 So.2d 619 (Fla. 3d DCA 1998); Almanza v. State, 716 So.2d 351 (Fla. 3d DCA 1998); Elliard, 714 So.2d at 1218; Holloway v. State, 712 So.2d 439 (Fla. 3d DCA), review granted, 727 So.2d 906 (Fla.1998); Dupree v. State, 711 So.2d 647 (Fla. 3d DCA 1998); Linder v. State, 711 So.2d 1340 (Fla. 3d DCA 1998).
[**] The trial transcript is before us in Appeal No. 97-1381.